IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRANDON SMITH,
Plaintiff,

v.

Case No. 26 cv _______

COOK COUNTY CORRECTIONAL OFFICER SOTO, Star # Unknown, COOK COUNTY CORRECTIONAL OFFICER CORTEZ, Star # Unknown, COOK COUNTY CORRECTIONAL OFFICER SMITH, Star # Unknown, UNKNOWN EMPLOYEES OF THE COOK COUNTY SHERIFF'S OFFICE, THOMAS J. DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS,

Defendants.

JURY DEMAND

______________________________________________________

**CIVIL RIGHTS COMPLAINT**

Plaintiff, BRANDON SMITH, by his undersigned attorneys, complains of Defendants COOK COUNTY CORRECTIONAL OFFICER SOTO, COOK COUNTY CORRECTIONAL OFFICER CORTEZ, COOK COUNTY CORRECTIONAL OFFICER SMITH, as-yet UNKNOWN EMPLOYEES OF THE COOK COUNTY SHERIFF'S OFFICE, THOMAS J. DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, as follows:

## INTRODUCTION

1. On January 4, 2025, Brandon Smith was a pretrial detainee in the custody of the Cook County Department of Corrections at the Cook County Jail in Chicago, Illinois. He had been convicted of nothing. That afternoon he was attacked by two other detainees, and he came out of that attack with a small cut on his face and a bloody nose. Within the hour he had a concussion, a fractured orbital floor, and fractures to the left side of his face. Those injuries were not inflicted

by the detainees who attacked him. They were inflicted by the correctional officers charged with protecting him, in a treatment room they deliberately emptied of witnesses.

2. After the detainee altercation, Defendant Correctional Officer Soto seized Mr. Smith, told him that he had been the instigator of the fight, and walked him back to “the Bubble” — the enclosed observation post from which correctional officers control door access and monitor the Jail's video feeds, and which is itself not covered by any camera. There, out of view of any recording device, Defendant Soto attempted to slam Mr. Smith against the door and then to the ground, and Defendant Officer Smith directed that Mr. Smith be handcuffed even though Mr. Smith was compliant and was not resisting. On information and belief, the purpose of the handcuffs was not security or the restoration of order. It was to ensure that Mr. Smith would be unable to fight back or protect himself from what the Defendant Officers had already decided to do to him.

3. When Mr. Smith objected to being handcuffed and called Defendant Officer Smith a name, Defendant Soto told him, in substance: “Just wait. You'll see if I'm a bitch.”

4. The Defendant Officers then walked Mr. Smith — handcuffed behind his back — to the Jail dispensary. Two nurses employed to provide medical care to detainees, Nurse Jimenez and Nurse Reese, were on duty in the dispensary. The Defendant Officers positioned themselves at the dispensary's two doors and ordered and yelled at the nurses to get out of the room. On information and belief, the Defendant Officers cleared the medical staff out of their own treatment room for a single reason: they did not want witnesses to the beating they were about to administer.

5. With the room cleared of witnesses, Defendant Soto struck Mr. Smith in the face with open-hand strikes approximately fourteen to fifteen times, while Mr. Smith sat handcuffed in a chair and could not raise a hand to protect his head. Defendants Officer Smith and Cortez stood at the doors and did nothing to stop it. On information and belief, Defendant Cortez's body-worn

camera was deactivated during the beating. The beating stopped only when Nurse Jimenez re-entered the dispensary and physically pushed herself in between Defendant Soto and Mr. Smith.

6. Mr. Smith made an immediate outcry to Nurse Reese that he had just been beaten by the guards. The Defendant Officers answered that outcry with a threat: if he kept saying he had been beaten, they would take him to “the elevator.” Within the Cook County Jail, the elevator is understood by detainees and officers alike to be a place with no camera coverage, and the threat was understood by Mr. Smith as a threat of a second and far more severe beating that the officers would get away with. Defendant Officer Smith added that Mr. Smith “wouldn't be able to talk” if he hit him.

7. Mr. Smith began vomiting from the head trauma. The nurses insisted that he be sent out to the hospital. Before Mr. Smith could be transported, Defendant Cortez insisted on conducting a recorded “exit interview” — switching on the body-worn camera he had kept off throughout the beating. On information and belief, the purpose of that recorded interview was to manufacture a false record attributing Mr. Smith's facial fractures to the earlier altercation with the two detainees rather than to the beating administered by the Defendant Officers. Mr. Smith, who had just been threatened with “the elevator,” said nothing, because he feared for his physical safety if he told the truth on camera.

8. At the hospital, Mr. Smith was diagnosed with a concussion, an orbital fracture, and additional fractures to his face.

9. The concealment did not end there. Days later, Mr. Smith missed a scheduled court date because Sheriff's personnel refused to transport him. On information and belief, they refused to transport him so that neither his defense attorney nor the presiding judge would see the condition of his face.

10. This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the beating of Brandon Smith, the deliberate effort to conceal it, the injuries and lasting harm he suffered, and the policies and practices of the Cook County Sheriff's Office that permitted a handcuffed, compliant pretrial detainee to be beaten in a camera-free room by officers who plainly expected that nothing would come of it.

## JURISDICTION AND VENUE

11. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of plaintiff's rights secured by the Constitution of the United States, and pursuant to the statutes and common law of the State of Illinois.

12. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims arise from the same case or controversy.

13. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, all Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district at the Cook County Jail in Chicago, Illinois.

## PARTIES

14. Plaintiff Brandon Smith is a resident of the Northern District of Illinois. At all times relevant to this Complaint, Mr. Smith was a pretrial detainee in the custody of the Cook County Department of Corrections and was housed at the Cook County Jail. He had not been convicted of the offense for which he was being held, and he was accordingly protected by the Due Process Clause of the Fourteenth Amendment.

15. At all relevant times, Defendant Correctional Officer Soto (first name and star number presently unknown to Plaintiff) was a Cook County Sheriff's Deputy assigned to the Cook

County Department of Corrections and serving as a correctional officer at the Cook County Jail, employed by the Cook County Sheriff's Office, and acting under color of law and within the scope of his employment. He is sued in his individual capacity.

16. At all relevant times, Defendant Correctional Officer Cortez (first name and star number presently unknown to Plaintiff) was a Cook County Sheriff's Deputy assigned to the Cook County Department of Corrections and serving as a correctional officer at the Cook County Jail, employed by the Cook County Sheriff's Office, and acting under color of law and within the scope of his employment. He is sued in his individual capacity.

17. At all relevant times, Defendant Correctional Officer Smith (first name and star number presently unknown to Plaintiff, and referred to throughout this Complaint as “Defendant Officer Smith” to distinguish him from Plaintiff Brandon Smith) was a Cook County Sheriff's Deputy assigned to the Cook County Department of Corrections and serving as a correctional officer at the Cook County Jail, employed by the Cook County Sheriff's Office, and acting under color of law and within the scope of his employment. He is sued in his individual capacity.

18. Defendants UNKNOWN EMPLOYEES OF THE COOK COUNTY SHERIFF'S OFFICE are correctional officers, supervisors, and other employees of the Cook County Sheriff's Office whose identities are presently unknown to Plaintiff and who participated in, were present for, failed to intervene in, concealed, or falsely reported the use of force described in this Complaint, or who refused to transport Mr. Smith to his scheduled court date. At all relevant times they acted under color of law and within the scope of their employment. They are sued in their individual capacities. Plaintiff will amend this Complaint to name these Defendants upon learning their identities through discovery.

19. Defendant THOMAS J. DART is the Sheriff of Cook County, Illinois. The Cook County Sheriff's Office operates the Cook County Department of Corrections and the Cook County Jail, and the Sheriff is the final policymaking authority for that Office with respect to the policies, practices, customs, training, supervision, and discipline of the correctional officers who staff the Jail. Defendant Dart is sued in his official capacity.

20. Defendant COOK COUNTY, ILLINOIS is a governmental entity within the State of Illinois. Cook County is a necessary party to this action and is obligated by Illinois law to pay any tort judgment or settlement entered against the Sheriff of Cook County or the employees of the Sheriff's Office for actions taken within the scope of their employment.

21. Nurse Jimenez and Nurse Reese, who were on duty in the dispensary and who are described throughout this Complaint, are not named as Defendants. They are identified because they are material witnesses to the events alleged and because their conduct — including Nurse Jimenez physically interposing herself to stop the beating, and Nurse Reese summoning an ambulance — is itself evidence of the severity and obviousness of what the Defendant Officers did.

## FACTS

### Mr. Smith Is Attacked by Two Detainees and Sustains Minor Injuries

22. On January 4, 2025, Brandon Smith was a pretrial detainee housed at the Cook County Jail, 2700 South California Avenue, Chicago, Illinois.

23. On that date, Mr. Smith was attacked by two other detainees.

24. Mr. Smith's injuries from that altercation were minor. They consisted of a small cut on his face and a bloody nose. He sustained no fracture, no head injury, and no injury to his left eye or left cheek in the altercation with the two detainees.

25. Following the altercation, Defendant Soto forcibly detained Mr. Smith and told him that he had been the instigator of the fight.

26. Although two detainees attacked Mr. Smith, only one of them was placed on the "ticket" — the Cook County Sheriff's Office term for the written disciplinary charge issued against a detainee. On information and belief, the incomplete and inaccurate documentation of the altercation is consistent with, and part of, the Defendant Officers' broader effort to control the written record of the events of January 4, 2025.

**The Defendant Officers Handcuff a Compliant Detainee in a Camera-Free Room and Announce What Is Coming**

27. Defendant Soto walked Mr. Smith back to "the Bubble."

28. "The Bubble" is the enclosed observation station from which correctional officers observe detainees, control door access, and monitor the video feeds from the Jail. Detainees are ordinarily not present inside the Bubble, and, on information and belief, the interior of the Bubble is not itself covered by any surveillance camera. The Defendant Officers knew this.

29. Once inside the Bubble, and out of the view of any camera, Defendant Soto attempted to slam Mr. Smith against the door and then to the ground.

30. Defendant Officer Smith then directed that Mr. Smith be handcuffed, stating "Cuff him up."

31. At that moment Mr. Smith was not resisting, was not combative, posed no threat to any officer, detainee, or himself, and was fully compliant. There was no legitimate penological or security justification for handcuffing him.

32. On information and belief, the purpose of handcuffing Mr. Smith was to render him unable to fight back, to shield his head, or to protect himself in any way from the physical force the Defendant Officers intended to use against him.

33. Mr. Smith objected to being handcuffed and called Defendant Officer Smith a “little bitch.”

34. Defendant Soto responded: “Just wait. You'll see if I'm a bitch.”

35. Defendant Soto's statement was a declaration of intent. It announced, before any force was used, that the Defendant Officers were going to punish Mr. Smith for talking back. The use of physical force was not to maintain order, restore discipline, or protect anyone's safety.

**The Defendant Officers Clear the Dispensary of Medical Witnesses**

36. Defendants Officer Smith and Soto then walked Mr. Smith to the Jail dispensary. Mr. Smith remained handcuffed behind his back throughout. Mr. Smith acknowledges that he was verbally arguing with the Defendant Officers as they walked. At no point did he physically resist, strike at, or threaten any officer.

37. Upon arrival at the dispensary, Defendants Officer Smith and Soto placed Mr. Smith in a chair while he was still handcuffed behind his back.

38. Nurse Jimenez and Nurse Reese, who were employed to provide medical care to detainees at the Cook County Jail, were present in the dispensary when Mr. Smith arrived.

39. Defendant Officer Smith positioned himself at one door of the dispensary. Defendant Cortez walked to the other door. Between them, the two Defendants controlled both points of entry to, and exit from, the room.

40. Defendant Cortez told Nurse Jimenez to leave the dispensary. Defendant Cortez instructed Nurse Reese to leave the dispensary. Defendants Cortez and Soto yelled at Nurse Jimenez to get out of the dispensary.

41. The nurses had done nothing wrong. They were on duty, in their own treatment room, with a handcuffed detainee who had visible injuries and needed to be assessed. There was no medical, security, or operational reason to remove them.

42. On information and belief, the reason the Defendant Officers ordered and yelled at the nurses to leave the dispensary was that the Defendant Officers did not want any witnesses to the beating they were about to inflict on Mr. Smith.

43. On information and belief, Defendant Cortez's body-worn camera was not activated at any point during the events described in the following section. Mr. Smith is able to state this because he is familiar with the indicator light that illuminates when a body-worn camera is recording, and he observed that Defendant Cortez's camera was not illuminated.

44. The removal of the nurses and the deactivation of the body-worn camera were not coincidences. Together with the choice of the camera-free Bubble and the later threat of “the elevator,” they reflect a deliberate and coordinated effort by the Defendant Officers to create a space in which they could beat a handcuffed detainee without being seen and without being recorded.

**Defendant Soto Beats Mr. Smith While He Is Handcuffed and Seated**

45. With the nurses removed and both doors controlled, Defendant Soto began striking Mr. Smith in the face with open-hand strikes.

46. Defendant Soto continued to strike Mr. Smith in the face approximately fourteen to fifteen times.

47. Throughout the beating, Mr. Smith was seated in a chair with his hands cuffed behind his back. He was unable to block the blows, shield his head, or protect his face in any way. He did not strike, kick, lunge at, or attempt to strike any officer at any time.

48. Defendant Soto's use of force was not applied in a good-faith effort to maintain or restore order or discipline. It was punitive, gratuitous, and inflicted for the purpose of causing harm. No reasonable officer in Defendant Soto's position could have believed that the force used was objectively reasonable under the circumstances.

49. Defendants Officer Smith and Cortez were present in the dispensary throughout the beating, standing at the two doors. Each of them saw the beating as it occurred, each of them knew that Mr. Smith was handcuffed and not resisting, and each of them had a realistic and reasonable opportunity to intervene and stop it. Neither did so. Instead, each of them controlled a door keeping witnesses (including Nurses Reese and Jimenez) out and Mr. Smith captive while the beating proceeded.

50. The beating ended only because Nurse Jimenez re-entered the dispensary and physically pushed herself in between Defendant Soto and Mr. Smith. A civilian nurse, and not a single one of the sworn officers present, was the only person in the room who acted to stop the assault of a handcuffed detainee.

51. As a result of Defendant Soto's strikes, Mr. Smith sustained obvious and extensive injuries to the left side of his face. Photographs of Mr. Smith taken after the incident depict obvious and severe damage to the left side of his face.

**<u>The Defendant Officers Threaten Mr. Smith With "The Elevator" to Silence His Outcry</u>**

52. Immediately after the beating, Mr. Smith made an outcry to Nurse Reese, reporting that he had just been beaten by correctional officers without justification.

53. In response to that outcry, the Defendant Officers threatened to take Mr. Smith to "the elevator" if he continued to complain that he had been beaten by guards.

54. Within the Cook County Jail, "the elevator" is understood by detainees and correctional officers alike to be a location that is not covered by any surveillance camera. Mr. Smith understood the threat, as it was intended, to mean that the Defendant Officers would beat him severely in the elevator, where there were no cameras and where they expected to face no consequence for harming him.

55. Defendant Officer Smith added that Mr. Smith "wouldn't be able to talk if I hit you."

56. These threats were made for the purpose of deterring Mr. Smith from reporting the beating to medical staff, to Sheriff's Office supervisors, to his attorney, to the court, and to anyone else who might document or investigate what had occurred.

57. The threats had their intended effect. Mr. Smith, who had just been beaten in a room the officers had emptied of witnesses, reasonably feared for his physical safety and was thereby deterred from reporting further.

**Mr. Smith's Condition Deteriorates and the Defendant Officers Stage a Recorded "Exit Interview"**

58. Shortly after the beating, Mr. Smith began vomiting which is an objectively obvious sign of significant head trauma.

59. Nurse Jimenez asked the Defendant Officers to re-cuff Mr. Smith in the front so that he could be more easily treated.

60. The nurses insisted that Mr. Smith needed to be sent to Cermak Health Services and to a hospital. Nurse Reese called for an ambulance. Nurse Jimenez bandaged Mr. Smith's head.

61. Before Mr. Smith could be transported out of the Jail for emergency treatment, Defendant Cortez insisted on conducting an "exit interview" of Mr. Smith. For that interview, and only for that interview, Defendant Cortez activated his body-worn camera — the same camera that, on information and belief, had been deactivated while Mr. Smith was being beaten.

62. On information and belief, the purpose of the recorded exit interview was to obtain a recorded statement from Mr. Smith attributing his facial injuries to the earlier altercation with the two detainees rather than to the beating administered by Defendant Soto, and thereby to create a false official record that would insulate the Defendant Officers from investigation and discipline.

63. Mr. Smith said nothing during the recorded exit interview. He remained silent because he had just been threatened with "the elevator" and because he feared for his personal safety if he stated on camera what the Defendant Officers had actually done to him.

64. The exit interview delayed Mr. Smith's transport to the hospital at a time when he had a head injury, was vomiting, and had been identified by the nurses on duty as requiring emergency care.

**<u>Mr. Smith's Injuries</u>**

65. Mr. Smith was transported by ambulance from the Cook County Jail to the hospital.

66. At the hospital, Mr. Smith was diagnosed with a concussion, an orbital fracture, and additional fractures to his face.

67. Mr. Smith sustained significant and visible damage to his left eye, his left cheekbone, his orbital floor, and the entire left side of his head.

68. None of these injuries were caused by the altercation with the two detainees, from which Mr. Smith emerged with only a small cut and a bloody nose. All of them were caused by

the strikes Defendant Soto delivered to a handcuffed man seated in a chair, while Defendants Officer Smith and Cortez guarded the doors.

**The Defendant Officers Conceal the Beating by Keeping Mr. Smith Away From His Lawyer and the Court**

69. Days after January 4, 2025, Mr. Smith was scheduled to appear in court in his pending criminal case.

70. Sheriff's Office personnel refused to transport Mr. Smith to that court date, and Mr. Smith missed his scheduled court appearance.

71. On information and belief, the reason Mr. Smith was not transported was that Sheriff's Office personnel did not want Mr. Smith's defense attorney or the presiding judge to observe the visible injuries to his face and thereby learn that he had been beaten by correctional officers.

72. The refusal to transport Mr. Smith to court was a continuation of the same course of concealment that began with the choice of camera-free locations, continued with the removal of the nurses and the deactivation of the body-worn camera, and continued further with the threats of "the elevator" and the staged recorded exit interview.

**The Beating of Mr. Smith Reflects the Policies, Practices, and Customs of the Cook County Sheriff's Office**

73. The conduct described above was not the isolated act of a single officer having a bad day. The components of case from the selection of camera-free locations, the clearing of civilian witnesses, the deactivated body-worn camera, the threat of a further beating in another camera-free location, the staged recorded statement, the incomplete disciplinary paperwork, and the refusal

to produce the injured detainee in court reflects officers operating with a settled expectation that they would not be caught, and that if they were caught, nothing would happen to them.

74. On information and belief, at all relevant times the Cook County Sheriff's Office maintained a widespread practice, custom, and de facto policy under which correctional officers used force against detainees in areas of the Cook County Jail known to be outside the coverage of surveillance cameras precisely because the absence of video made the use of force difficult to detect, investigate, or prove.

75. On information and belief, at all relevant times the Cook County Sheriff's Office maintained a widespread practice, custom, and de facto policy of failing to enforce its own body-worn camera requirements, under which officers routinely failed to activate their cameras during uses of force and were not meaningfully disciplined for doing so.

76. On information and belief, at all relevant times the Cook County Sheriff's Office maintained a widespread practice, custom, and de facto policy of a code of silence, under which correctional officers did not report, and affirmatively concealed, uses of excessive force by fellow officers; failed to intervene in uses of excessive force by fellow officers; and prepared incomplete or false reports of incidents involving force.

77. On information and belief, at all relevant times the Cook County Sheriff's Office maintained a widespread practice, custom, and de facto policy of failing to adequately investigate detainee complaints and grievances alleging excessive force by correctional officers, and of failing to discipline, retrain, supervise, or remove correctional officers who used excessive force against detainees.

78. On information and belief, at all relevant times the Cook County Sheriff's Office maintained a widespread practice, custom, and de facto policy under which correctional officers

retaliated against, threatened, and intimidated detainees who reported or attempted to report excessive force, in order to suppress complaints and prevent documentation of officer misconduct.

79. These policies, practices, and customs were maintained with deliberate indifference to the constitutional rights of pretrial detainees at the Cook County Jail. The Sheriff and other final policymakers of the Cook County Sheriff's Office had actual and constructive knowledge of them through, among other things, detainee grievances and complaints, use-of-force reports, internal affairs files, civil litigation and settlements arising from uses of force at the Cook County Jail, and federal investigation, litigation, and monitoring concerning the treatment of detainees at the Cook County Jail.

80. Each of the foregoing policies, practices, and customs was, separately and together, a direct and proximate cause and a moving force behind the constitutional violations committed against Brandon Smith and the injuries he suffered.

**Damages**

81. As a direct and proximate result of the Defendants' misconduct, Brandon Smith suffered a concussion, an orbital fracture, additional facial fractures, and other physical injuries, together with the pain, suffering, medical treatment, and continuing physical consequences that accompany them.

82. As a direct and proximate result of the Defendants' misconduct, Mr. Smith suffered severe emotional distress, humiliation, degradation, fear for his physical safety, and mental anguish, including the distress of being beaten while restrained and helpless and then threatened with a further beating if he told anyone.

83. As a direct and proximate result of the Defendants' misconduct, Mr. Smith incurred and will continue to incur expenses for medical care and treatment, and he missed a scheduled court appearance in his pending criminal case.

## COUNT I – 42 U.S.C. § 1983

### Excessive Force (Fourteenth Amendment)

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

84. Each paragraph of this Complaint is incorporated as if restated fully herein.

85. At all relevant times, Brandon Smith was a pretrial detainee. He therefore had a clearly established right under the Due Process Clause of the Fourteenth Amendment to be free from the use of objectively unreasonable force and from force applied for the purpose of punishment.

86. As described more fully above, Defendant Soto used force against Mr. Smith — slamming or attempting to slam him against a door and to the ground, and thereafter striking him in the face approximately fourteen to fifteen times while he sat handcuffed in a chair — that was objectively unreasonable in light of the facts and circumstances confronting him.

87. Mr. Smith was handcuffed, seated, compliant, and posed no threat to any person. He was not resisting, was not attempting to flee, and had committed no act requiring any application of force. The force used bore no relationship to any legitimate governmental objective, was not applied in a good-faith effort to maintain or restore discipline, and was excessive in relation to any conceivable need.

88. Defendants Officer Smith and Cortez each caused, directed, participated in, and facilitated this use of force, including by ordering that a compliant detainee be handcuffed for the purpose of preventing him from protecting himself, by removing the medical witnesses from the

room, and by controlling the doors of the dispensary so that the beating could proceed without interruption or observation.

89. The Defendants' use of force was applied maliciously and sadistically for the very purpose of causing harm, and constituted punishment inflicted on a person who had not been convicted of any crime.

90. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally and with willful indifference to Mr. Smith's constitutional rights, and directly and proximately caused the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages against each individual Defendant, and such other and further relief as this Court deems just and appropriate.

**COUNT II – 42 U.S.C. § 1983**

**Failure to Intervene**

***(Against Defendants Officer Smith, Cortez, Soto, and Unknown Employees)***

91. Each paragraph of this Complaint is incorporated as if restated fully herein.

92. As described more fully above, one or more of the Defendants stood by without intervening to prevent the violation of Brandon Smith's constitutional rights, including the attempt to slam him against the door and to the ground in the Bubble, the handcuffing of a compliant detainee for the purpose of rendering him defenseless, the sustained beating administered in the dispensary, the threats of further violence made to suppress his outcry, and the delay of his emergency medical transport.

93. Each of these Defendants was physically present, knew that the force being used against Mr. Smith was excessive and unjustified, and had a realistic and reasonable opportunity to intervene to prevent or stop the harm. Each of them failed to do so.

94. That intervention was both possible and effective is demonstrated by the fact that the beating stopped the moment an unarmed civilian nurse re-entered the room and stepped between Defendant Soto and Mr. Smith.

95. The misconduct described in this Count was objectively unreasonable, was undertaken with willful indifference to Mr. Smith's constitutional rights, and directly and proximately caused the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages against each individual Defendant, and such other and further relief as this Court deems just and appropriate.

**COUNT III – 42 U.S.C. § 1983**

**Denial and Delay of Medical Care (Fourteenth Amendment)**

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

96. Each paragraph of this Complaint is incorporated as if restated fully herein.

97. As a pretrial detainee, Brandon Smith had a clearly established right under the Due Process Clause of the Fourteenth Amendment to receive objectively reasonable medical care for his serious medical needs while in the custody of the Cook County Sheriff's Office.

98. Following the beating, Mr. Smith had an objectively serious medical need. He had sustained a concussion, an orbital fracture, and additional facial fractures; he had obvious and

extensive visible trauma to the left side of his face; and he was vomiting. His need for prompt emergency medical attention was obvious to any layperson, and was in fact obvious to the nurses on duty, who called an ambulance and insisted that he be sent out of the Jail.

99. The Defendant Officers acted purposefully, knowingly, and objectively unreasonably with respect to that serious medical need. They removed the medical staff from the dispensary before the beating; they beat Mr. Smith in the face until he sustained fractures and a concussion; they threatened him with further violence if he told the medical staff what had happened, thereby interfering with his ability to obtain accurate assessment and treatment; and Defendant Cortez delayed Mr. Smith's transport out of the Jail in order to conduct a recorded “exit interview” at a time when Mr. Smith was concussed, vomiting, and awaiting an ambulance.

100. These acts and omissions caused Mr. Smith to endure an unreasonable delay in receiving emergency treatment, and caused him additional pain, suffering, and risk of harm.

101. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally and with willful indifference to Mr. Smith's constitutional rights, and directly and proximately caused the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages against each individual Defendant, and such other and further relief as this Court deems just and appropriate.

## COUNT IV – 42 U.S.C. § 1983

### Retaliation for Protected Speech (First Amendment)

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

102. Each paragraph of this Complaint is incorporated as if restated fully herein.

103. Brandon Smith engaged in activity protected by the First Amendment when he made an immediate oral outcry to Nurse Reese complaining that he had been beaten by correctional officers without justification, and when he sought to report that misconduct.

104. In direct response to that protected activity, the Defendant Officers threatened to take Mr. Smith to "the elevator" — a camera-free location within the Jail — if he continued to complain that he had been beaten by guards, and Defendant Officer Smith told him that he "wouldn't be able to talk" if he hit him.

105. On information and belief, Sheriff's Office personnel further retaliated against and sought to suppress Mr. Smith's complaint by refusing to transport him to his scheduled court date, thereby preventing him from being seen by his defense attorney and the Court.

106. These threats and actions would deter a person of ordinary firmness from continuing to engage in protected activity, and they in fact deterred Mr. Smith, who remained silent during the recorded exit interview because he feared for his physical safety.

107. The misconduct described in this Count was undertaken intentionally, was motivated by Mr. Smith's protected activity, and directly and proximately caused the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages against each individual Defendant, and such other and further relief as this Court deems just and appropriate.

## COUNT V – 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

108. Each paragraph of this Complaint is incorporated as if restated fully herein.

109. Defendants Soto, Officer Smith, Cortez, and Unknown Employees of the Cook County Sheriff's Office, acting within the scope of their employment and under color of law, reached an agreement among themselves to deprive Brandon Smith of his constitutional rights and to protect one another from liability for having done so.

110. In furtherance of this conspiracy, each of these Defendants engaged in and facilitated overt acts, including but not limited to: moving Mr. Smith to locations within the Jail known to be free of camera coverage; handcuffing a compliant detainee so that he could not defend himself; ordering and yelling at the nurses on duty to leave the dispensary so that there would be no witnesses; failing to activate a body-worn camera during the use of force; administering and permitting the beating; threatening Mr. Smith with a further beating in "the elevator" if he reported what had occurred; conducting a recorded "exit interview" designed to attribute Mr. Smith's injuries to the detainee altercation; documenting the underlying altercation incompletely; and refusing to transport Mr. Smith to court so that his injuries would not be observed by his attorney or the court.

111. In so doing, these co-conspirators agreed to accomplish an unlawful purpose by unlawful means, and agreed among themselves to protect one another from liability for depriving Mr. Smith of his constitutional rights.

112. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally and with total disregard for Mr. Smith's rights, and directly and proximately caused the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages against each individual Defendant, and such other and further relief as this Court deems just and appropriate.

**COUNT VI – 42 U.S.C. § 1983**

**Municipal Liability – Policy and Practice**

***(Against Defendant Thomas J. Dart, Sheriff of Cook County, in his Official Capacity)***

113. Each paragraph of this Complaint is incorporated as if restated fully herein.

114. The actions of Defendants Soto, Officer Smith, Cortez, and Unknown Employees of the Cook County Sheriff's Office were undertaken pursuant to the de facto policies, practices, and customs of the Cook County Sheriff's Office and the Cook County Department of Corrections, including: (a) the use of force against detainees in areas of the Jail known to be outside camera coverage; (b) the failure to enforce body-worn camera activation requirements during uses of force; (c) a code of silence under which officers do not report, and affirmatively conceal, excessive force by fellow officers and do not intervene to stop it; (d) the preparation of false, incomplete, or misleading reports of incidents involving the use of force; (e) the failure to adequately investigate detainee complaints and grievances alleging excessive force; (f) the failure to adequately train, supervise, monitor, discipline, or remove correctional officers who use excessive force against

detainees; and (g) the threatening and intimidation of detainees who report or attempt to report officer misconduct.

115. These policies, practices, and customs were so widespread, permanent, and well settled as to constitute the de facto policy of the Cook County Sheriff's Office, and were maintained with deliberate indifference to the constitutional rights of pretrial detainees by policymakers who knew or should have known of them.

116. These policies, practices, and customs were, separately and together, a direct and proximate cause and a moving force behind the constitutional violations committed against Brandon Smith and the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against Defendant Thomas J. Dart, Sheriff of Cook County, in his official capacity, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and appropriate.

## COUNT VII – State Law Claim

### Battery

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

117. Each paragraph of this Complaint is incorporated as if restated fully herein.

118. As described more fully above, Defendant Soto intentionally made physical contact with Brandon Smith without legal justification, including by slamming or attempting to slam him against a door and to the ground and by striking him in the face approximately fourteen to fifteen times. That contact was harmful and offensive.

119. Defendants Officer Smith and Cortez caused, directed, and assisted in this harmful and offensive contact, including by ordering that Mr. Smith be handcuffed so that he could not defend himself and by controlling the doors of the dispensary so that the battery could proceed without interruption.

120. The actions of these Defendants were intentional, willful, and wanton, and were undertaken with intentional disregard of Mr. Smith's rights and safety.

121. As a direct and proximate result of these Defendants' misconduct, Mr. Smith sustained the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, punitive damages against each individual Defendant, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT VIII – State Law Claim

### Intentional Infliction of Emotional Distress

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

122. Each paragraph of this Complaint is incorporated as if restated fully herein.

123. The acts and conduct of these Defendants as set forth above were extreme and outrageous. Sworn officers, exercising complete custodial control over a pretrial detainee, handcuffed a compliant man so that he could not protect himself, cleared a treatment room of medical witnesses, beat him in the face until his facial bones fractured, threatened him with a further beating in a camera-free elevator if he told anyone, and then delayed his emergency transport in order to record a statement designed to blame his injuries on someone else.

124. These Defendants' actions were rooted in an abuse of the power and authority they held over a person in their custody, and were undertaken with the intent to cause, or in reckless disregard of the high probability that their conduct would cause, severe emotional distress to Mr. Smith.

125. As a direct and proximate result of these Defendants' actions, Mr. Smith suffered severe emotional distress, including fear for his physical safety, humiliation, degradation, and mental anguish.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, punitive damages against each individual Defendant, costs, and such other and further relief as this Court deems just and appropriate.

**COUNT IX – State Law Claim**

**Willful and Wanton Conduct**

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

126. Each paragraph of this Complaint is incorporated as if restated fully herein.

127. These Defendants owed Brandon Smith, a person in their custody and wholly dependent upon them for his safety, a duty to refrain from willful and wanton conduct that would injure him.

128. These Defendants breached that duty by using excessive force against Mr. Smith, by handcuffing him so that he could not protect himself from that force, by failing to intervene to prevent it, by threatening him with further violence, and by delaying his access to emergency medical treatment.

129. The actions and omissions of these Defendants were willful and wanton in that they demonstrated an utter indifference to and conscious disregard for the safety of Mr. Smith. These Defendants were aware that injury was likely to result from their acts and omissions and recklessly disregarded the consequences.

130. As a direct and proximate result of these Defendants' willful and wanton conduct, Mr. Smith sustained the injuries and damages described herein.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, punitive damages against each individual Defendant, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT X – State Law Claim

### Civil Conspiracy

***(Against Defendants Soto, Officer Smith, Cortez, and Unknown Employees)***

131. Each paragraph of this Complaint is incorporated as if restated fully herein.

132. As described throughout this Complaint, these Defendants, acting in concert with one another and with known and unknown co-conspirators, conspired by concerted action to accomplish unlawful purposes by unlawful means, including the battery of Brandon Smith, the intentional infliction of severe emotional distress upon him, and the concealment of that misconduct from medical staff, from Sheriff's Office supervisors, from Mr. Smith's counsel, and from the court.

133. Each of these Defendants committed unlawful overt acts in furtherance of this conspiracy and was otherwise a willful participant in joint activity, as described herein.

134. As a direct and proximate result of this conspiracy, Mr. Smith suffered the injuries and damages described throughout this Complaint.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against the Defendants named in this Count, awarding compensatory damages, punitive damages against each individual Defendant, costs, and such other and further relief as this Court deems just and appropriate.

**COUNT XI – State Law Claim**

**Respondeat Superior**

***(Against Defendant Thomas J. Dart, Sheriff of Cook County)***

135. Each paragraph of this Complaint is incorporated as if restated fully herein.

136. In committing the acts alleged in this Complaint, Defendants Soto, Officer Smith, Cortez, and the Unknown Employees of the Cook County Sheriff's Office were employees and agents of the Cook County Sheriff's Office acting within the scope of their employment and under color of law at all relevant times.

137. Defendant Thomas J. Dart, Sheriff of Cook County, is liable as principal for all torts in violation of state law committed by his agents and employees within the scope of their employment.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against Defendant Thomas J. Dart, Sheriff of Cook County, awarding compensatory damages, costs, and such other and further relief as this Court deems just and appropriate.

**COUNT XII – State Law Claim**

**Indemnification**

***(Against Defendants Thomas J. Dart, Sheriff of Cook County, and Cook County, Illinois)***

138. Each paragraph of this Complaint is incorporated as if restated fully herein.

139. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which their employees are liable while acting within the scope of their employment. 745 ILCS 10/9-102.

140. Defendants Soto, Officer Smith, Cortez, and the Unknown Employees of the Cook County Sheriff's Office were at all relevant times employees of the Cook County Sheriff's Office acting within the scope of their employment in committing the misconduct described herein.

141. Defendant Cook County, Illinois is required to pay any judgment entered against the Sheriff of Cook County or the employees of the Cook County Sheriff's Office arising out of conduct within the scope of their employment, and is therefore a necessary party to this action.

**WHEREFORE,** Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against Defendants Thomas J. Dart, Sheriff of Cook County, and Cook County, Illinois, for indemnification of any judgment entered against the individual Defendants, together with costs and such other and further relief as this Court deems just and appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BRANDON SMITH respectfully requests that this Court enter judgment in his favor and against Defendants COOK COUNTY CORRECTIONAL OFFICER SOTO, COOK COUNTY CORRECTIONAL OFFICER CORTEZ, COOK COUNTY CORRECTIONAL OFFICER SMITH, as-yet UNKNOWN EMPLOYEES OF THE COOK

COUNTY SHERIFF'S OFFICE, THOMAS J. DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, awarding compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages against each of the individual Defendants, and any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

BRANDON SMITH

By,
/s/ Jon Neuleib

Erickson & Oppenheimer, Ltd.
Jon Neuleib
223 W. Jackson, Suite 612
Chicago, IL 60606
312-327-3370
One of his attorneys